UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK                6:20-CV-06510 EAW
_____X

RAUL ESTELA,

                            Plaintiff,

            v.

ROCHESTER REGIONAL HEALTH,
ELAINE CLACK, KATHERINE STEWART,
PAUL STAUB, CHASE BUTTACCIO,

                         Defendants.

_____X

## AMENDED COMPLAINT

_____

    1. Plaintiff, RAUL ESTELA ("Plaintiff"), appearing Pro Se, brings this amended complaint, by permission of the Court, in this action pursuant to, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. ("Title VII"), and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, et seq., which prohibit an employer from discriminating on the basis of race, sex, and religion; The Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, which prohibits employers from discriminating against qualified individuals because of a disability. 42 U.S.C. § 12112. et seq.., and for

Retaliation, which prohibits employers from taking an adverse employment action in retaliation against the employee's engaging in a protected activity, i.e., for complaining about conduct prohibited under Title VII., and under provisions NYSHRL. This

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff is an adult male individual residing within the United States.

3. Defendant is a hospital facility with residence and location within the Western District of New York

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. ("Title VII") and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, et seq., Title I of the Americans with Disabilities Act ("ADEA"), 42 U.S.C. § 12112(a), the Age Discrimination in Employment Act, 29 USC§ 621, et. seq. (ADA), and the New York State Human Rights Law (NYSHRL).

5. Defendant hospital is located within the Western District of New York, and Plaintiff resides within this District. All actions by Defendants alleged herein occurred within the Western District of New

2

York. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) & (c).

## FACTUAL ALLEGATIONS WITH REGARD TO RACIAL DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION CLAIM

6. Plaintiff is male and was born in 1985. He describes his race/color as "Puerto Rican/White." Plaintiff has "several disabilities" resulting from his military service. Plaintiff was hired by Defendant Rochester Regional Health (RRH)("Defendant") as a security officer on March 7, 2016.

7. Plaintiff was hired by Defendant as a Security and Safety Officer, whose duties and performance obligations included overseeing patients' safety where they suffered from mental illnesses and often became aggressive and violent with themselves, other patients, and hospital employees.

8. Plaintiff never had any disciplinary notices, write-ups, or negative performance evaluations, and had the "fastest promotion" to the rank of sergeant. After December 2019 Plaintiff acted as a Lieutenant for the evening shift.

9. On February 13, 2019, Plaintiff was called into Clack's office in the human resources department at RRH. Stewart, the security manager, was also present. (Id.). Clack told Plaintiff she wanted to go over a complaint made by a staff member, and that it would be a "friendly sit-down discussion[.]". Clack then stated that the complaint was about "a black man being choked." Plaintiff states that Clack was referring to an incident on February 11, 2019, when a "very violent patient" threatened staff, causing security to be called.

10. Plaintiff attempted to speak to the patient to deescalate the situation, but the patient tried to assault one of the guards present. Plaintiff asked Clack if the patient had made the complaint, and Clack became angry. She asked plaintiff "interrogation questions," causing him to feel like he "was being persecuted.".

11. Plaintiff knew that the patient in question had not complained, because after the patient was restrained and medicated, he apologized to Plaintiff. Clack would not allow Plaintiff to speak, because she was "focused on trying to have positive confrontation toward" Plaintiff. Clack was "basing all her questions, and personal feelings off a picture that was emailed to her.".

4

12. She said several times that Plaintiff had "assaulted a Black man by choking him out completely." Clack further stated that she had watched the video of the restraint and that Plaintiff had caused the patient pain. Plaintiff told Clack that the incident did not happen the way that she thought it did and that the patient had not complained.

13. He asked Clack if she had spoken to the patient and she stated that she had not. Clack was sarcastic towards Plaintiff and asked him how old he was and what his experience level was, but then told him that it did not matter. Clack told Plaintiff that she was the Director of Human Resources and that "nothing gets past her." Clack also brought up other patient complaints that had been investigated and deemed not founded.

14. Stewart was present for the entire meeting, but "never spoke a word" and "a few times she was looking towards her cell phone." On February 21, 2019, Plaintiff was "let go" from his employment at RRH. He was told that it was because he had "retaliated against an officer on [his] day off.

15. Clack had made a "derogatory statement" about Plaintiff's military veteran status, age, race/color, and sex on February 13, 2019, at approximately 5:00 p.m.;

16. Moreover, the following events occurred forming the basis for Plaintiff's retaliation claims: (a) Stewart retaliated against Plaintiff after the February 13th meeting, because Plaintiff "had complained about Clack and Chase Buttaccio human resources HR; (b) Clack retaliated against Plaintiff after the February 13th meeting, because Plaintiff complained to Clack's supervisors about her "interview questions tactics"; (c) Stewart and Staub retaliated against Plaintiff because Plaintiff "asked about promotion pay Dec 24th"; and (6) Buttaccio made an unspecified "statement" about Plaintiff, "which constituted retaliation because of Plaintiff's previous complaints set forth herein .

17. By reason thereof, Defendant's conduct constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

## FACTUAL ALLEGATIONS WITH REGARD TO PLAINTIFF'S ADA CLAIMS

18. Plaintiff disclosed to Defendant's representative when he was hired that he was a Disabled U.S. Marine Corps Veteran having ongoing treatment for his condition sustained while on active duty.

19. At that time, in or about February or March 2016, Plaintiff provided Defendant with medical records from the Military reflecting shot treatments for service-connected injuries.

20. This related to injuries Plaintiff sustained while on Active Duty, specifically that he sustained several injuries to parts of his body's extremities, i.e., to his knees, hips, spine, head, and brain.

21. Specifically, these medical conditions affecting or limiting his daily activities were, *inter alia*, (a) left knee Patella tendinosis and Patellofemoral syndrome; (b) Specific trauma and stressors related disorder; (c) Lumbosacral degenerative disc disease with Disc Bulges, protruding and Spinal Stenosis; and (d) Sleep Apnea- Daytime Narcolepsy (Shift work Sleep Disorder)

22. Plaintiff advised nurses employed by Defendant who were assessing his condition that there were days when his back- spine, and legs would flare or lock-up, requiring that he go to the VA hospital for

s/treatment and medications prior to coming into work. Plaintiff notified the nurse, who promised to notify his supervisor that These conditions therefore adversely affected or limited many of his daily life activities.

23. The nurse advised Plaintiff that she would document it on his medical records, and, and also when he had to make any VA Hospital appointments. Every time he had any appointments, Plaintiff would notify his supervisors.

24. Despite the Defendant's Safety & Security Department's shortage of Officers, by reason of these conditions, it was very difficult for Plaintiff to return to work the next day a without one or more re-occurrence of these conditions.

25. When situations occurred dealing with violent patients his whole body would flare or lock up when his job was physically challenging due to violent patients under influence of drugs or alcohol.

26. On some evenings when Plaintiff was assigned to a Patrol Vehicle, all units would be called to assist in dealing with violent patients assaulting staff or other patients.

27. As a result of a shortages of Security Officers at the hospital caused by Defendant's refusal to allow additional security officers to be

several Injuries per month occurred to many Security Officers, including Plaintiff.

28. On July 13, 2017, Plaintiff sustained serious injuries on the job when a violent patient attacking another officer with a knife, requiring Plaintiff to disarm the patient. These injuries included a broken finger in his dominant hand, as well as injuries to his wrist, and knuckles, causing Plaintiff to be out of work for 4 months, and requiring multiple surgeries, and wearing a hand cast thereafter.

29. When I was able to return to work under Doctor's orders in early November 2017, I still had my hand wrapped in gauze, and was attending Physical Therapy to increase his strength and mobility.

30. Despite this condition, instead of accommodating plaintiff's known injuries and resulting disability by lightening his workload, he was compelled by Defendant's Director of Safety and Security, Paul Staub, and Manager Kate Stewart's idea to work in as a Telephone Dispatcher which requires substantial "multi-tasking" functions using both hands.

31. Specifically, Plaintiff's role was to individually and without assistance dispatch between 100 to 200 telephone calls ion every 8-hour

shift, a function which is essential to have any Security Officer to get promptly called to an emergency situation.

32. It requires singularly taking all 100 to 200 telephone calls per 8-hour shift, taking notes of the calls, and using the radio to dispatch Security Officers to the emergency and typing it into the computer, monitoring the Security officers to the emergency, while monitoring the surveillance cameras for further suspicious activities.

33. All of these tasks proved very difficult for Plaintiff, because of injuries to his dominant hand used for typing, yet Defendant did nothing to lighten his tasks as an accommodation, despite that it was known to his supervisors and managers.

34. After the surgeries and removal of the pins from Plaintiff's knuckles/fingers I had to learn how to write again. After his surgeries. Plaintiff lost feeling in two of his dominant hand fingers, with a loss of strength in his entire arm, hand and wrist.

35. When Plaintiff advised his direct supervisor, Lt. Kenny Lagares, of these difficulties which prevented him from performing his duties in an effective and proficient manner, he was told by Lt. Lagares

that any efforts at accommodation was "over his head", meaning the decision belonged to supervisors Paul Staub & Kate Stewart.

36. Lt. Lagares also suggested that I could do the Patrol Vehicle Positions which would be easier on my current conditions, which was not true since it would similarly require performing functions using his injured hand, wrist and arm.

37. He was also advised that he could not return to work until he received a Release of Full Duty and submit it to employee health, which was contrary to offering a meaningful accommodation which would allow him to return to work performing lighter duties.

38. Thus, in no manner did his supervisors, specifically Paul Staub and Kate Stewart, provide reasonable accommodations to allow him to return to work, but rather forced him to stay home until he could obtain a doctor's permission to return to work at Full Duty without limitation to protect his injured left hand, wrist and fingers.

**FIRST CLAIM FOR RELIEF**

**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e et seq. ("Title VII") and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, et seq., and Provisions of the ADEA for Retaliation against Plaintiff for Engaging in Protected Activities, and for Hostile Activities**

39. Plaintiff repeats, re-alleges and incorporates by reference herein paragraphs "6" through "17" inclusive as though fully set forth herein.

40. The foregoing federal statutes and the NYSHRL prohibit retaliation for engaging in protected activity, must show Plaintiff's [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action."

41. By reason thereof, Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

**SECOND CLAIM FOR RELIEF**

**Violation of the Americans with Disabilities Act against Defendant**

42. Plaintiff repeats, re-alleges and incorporates by reference herein paragraphs "18" through "38" inclusive as though fully set forth herein.

43. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

44. Because the aforesaid injuries as set forth herein substantially limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the ADA.

45. Plaintiff was fully qualified to be a Security and Safety Officer for Defendant and could perform all the essential functions of his position, with the appropriate accommodations in consideration of these injuries.

46. Defendant is a covered employer to which the ADA applies.

47. Defendant terminated and disqualified Plaintiff from employment solely because Plaintiff incurred these injuries, without making an individualized assessment to determine whether Plaintiff could perform the essential functions of the job of Security and Safety Officer and be employed by Defendant, or whether a reasonable

accommodation would enable him to be employed as a Security and Safety Officer by Defendant, as is required under the ADA.

48. Defendant's termination and disqualification of Plaintiff on the basis of his disability and Defendant's failure to make an individualized assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable him to be employed by Defendant violated the ADA.

49. As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Declaring that Defendant violated provisions of Title VII, NYSHRL and other laws in retaliation against Plaintiff's protected activities under law.

b. Declaring that Defendant violated provisions of Title VII, the ADEA, and State Law under the NYSHRL in denying Plaintiff employment without an individualized assessment of whether they can

perform the essential functions of the job, (with reasonable accommodations as set forth herein);

    c.    Awarding Plaintiff back pay in an amount to be determined at trial;

    d.    In the event reinstatement is not granted, awarding Plaintiff front pay in an amount to be determined at trial;

    e.    Awarding Plaintiff compensatory and consequential damages, including damages for emotional distress;

    f.    Awarding Plaintiff punitive damages to be assessed at trial, to the statutory maximum allowed by law;

    g.    Awarding Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

    h.    Awarding Plaintiff the costs of this action; and

    i.    For such other and further relief as the Court deems just and appropriate.

Dated: May 26, 2021

                          Respectfully submitted,

                          _____
                          RAUL ESTELA

                          *Plaintiff Appearing Pro Se*
                          8506 Oconor Cresent
                          Norfolk, VA. 23503
                          Tel.: (585)-704-5087

To: Rochester Regional Health
    Defendant
    1425 Portland Ave.
    Rochester, N.Y. 14621

## **CERTIFICATION**

I, Raul Estela, Plaintiff herein, hereby certifies under penalties of perjury that to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(3) the complaint otherwise complies with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Dated: May 26, 2021

_____<br>
RAUL ESTELA

## **CERTIFICATE OF MAILING**

I, Raul Estela, hereby state under penalties of perjury that:

On the 26th day of May 2021 I caused to be deposited in the United States Mail a copy of the amended complaint in the above captioned case, postage prepaid, by First Class Mail, addressed to the following defendant:

    Rochester Regional Health
    1425 Portland Ave.
    Rochester, N.Y. 14621

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 26, 2021

_____
RAUL ESTELA

This package is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; May 2020; All rights reserved.

**PRIORITY MAIL EXPRESS®**

FLAT RATE ENVELOPE
RATE ■ ANY WEIGHT

$26.35

**FROM:** Estela Raul
8506 Ocean Cres.
Norfolk VA 23503
PHONE (855) 704-5057

**TO:** United States District Court Clerk
2120 U.S. Courthouse
100 State Street
Rochester NY
ZIP+4: 14614-1387

PO ZIP Code: 23462
Date Accepted: 5/26/2021
Time Accepted: 11:16 AM
Scheduled Delivery Date: 5/27/2021
Scheduled Delivery Time: 3:00 PM
Postage: $26.35
Total Postage & Fees: $26.35
Acceptance Employee Initials: Kent

EJ 813 075 049 US

Postmark: USPS WDNY ROCHESTER MAY 27 2021