UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAUL ESTELA,

                 Plaintiff,

        v.

ROCHESTER REGIONAL HEALTH,
ELAINE CLACK[1], KATHERINE
STEWART, PAUL STAUB, CHASE
BUTTACCIO,

                 Defendants.

**DECISION AND ORDER**

6:20-CV-06510 EAW

## INTRODUCTION

*Pro se* plaintiff Raul Estela ("Plaintiff") brings this action against defendants Rochester Regional Health ("RRH"), Elaine Clack ("Clack"), Katherine Stewart ("Stewart"), Paul Staub ("Staub"), and Chase Buttaccio ("Buttaccio") (collectively "Defendants"), and originally asserted discrimination on the basis of race, color, sex, religion, age, disability, and military service, as well as retaliation. (Dkt. 1). The Court previously granted Plaintiff leave to proceed *in forma pauperis* and, pursuant to 28 U.S.C. § 1915(e)(2), dismissed certain of his claims, as discussed further below. (Dkt. 3). The Court afforded Plaintiff an opportunity to amend with respect to certain claims (*id*.), and he has filed an amended complaint in which he asserts claims of racial discrimination,

---

[1]     The Court previously misread Plaintiff's handwritten original complaint to indicate that this defendant's last name was "Clark"; his typewritten amended complaint makes clear that her last name is "Clack."

hostile work environment, and retaliation, and for violations of the Americans with Disabilities Act (Dkt. 4). The Court has again reviewed Plaintiff's claims as required by 28 U.S.C. § 1915(e)(2) and determines that they must be dismissed for the reasons that follow.

## <u>BACKGROUND</u>

The following facts are taken from Plaintiff's amended complaint. (Dkt. 4). As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff is male and was born in 1985. (*Id*. at ¶ 6). He describes his race/color as "Puerto Rican/White." (*Id*.). Plaintiff has "several disabilities" resulting from his military service. (*Id*.).

Plaintiff was hired by RRH as a security officer, and his duties including overseeing the safety of patients with mental illnesses. (*Id*. at ¶ 7). Plaintiff never had any disciplinary notices, write-ups, or negative performance evaluations, and had the "fastest promotion" to the rank of sergeant. (*Id*. at ¶ 8). After December of 2019, Plaintiff acted as a lieutenant for the evening shift. (*Id*.).

On February 13, 2019, Plaintiff was called into Clack's office in the human resources department at RRH. (*Id*. at ¶ 9). Stewart, the security manager, was also present. (*Id*.). Clack told Plaintiff she wanted to go over a complaint made by a staff member, and that it would be a "friendly sit-down discussion[.]" (*Id*. (alteration in original)). Clack stated that the complaint was about "a black man being choked." (*Id*.). Plaintiff alleges that Clack was referring to an incident on February 11, 2019, when a "very violent patient" threatened staff, causing security to be called. (*Id*.). Plaintiff attempted to speak to the

patient to deescalate the situation, but the patient tried to assault one of the guards present. (*Id*. at ¶ 10).

Plaintiff asked Clack if the patient had made the complaint, and Clack became angry. (*Id*.). She asked Plaintiff "interrogation questions," causing him to feel like he "was being persecuted." (*Id*.). Plaintiff knew that the patient in question had not complained, because after the patient was restrained and medicated, he apologized to Plaintiff. (*Id*. at ¶ 11).

Clack would not allow Plaintiff to speak, because she was "focused on trying to have positive confrontation toward" Plaintiff. (*Id*.). Clack was "basing all her questions, and personal feelings off a picture that was emailed to her." (*Id*.). She said several times that Plaintiff had "assaulted a Black man by choking him out completely." (*Id*. at ¶ 12). Clack further stated that she had watched the video of the restraint and that Plaintiff had caused the patient pain. (*Id*.). Plaintiff told Clack that the incident did not happen the way that she thought it did and that the patient had not complained. (*Id*.). Plaintiff asked Clack if she had spoken to the patient and she stated that she had not. (*Id*. at ¶ 13).

Clack was sarcastic towards Plaintiff and asked him how old he was and what his experience level was, but then told him that it did not matter. (*Id*.). Clack told Plaintiff that she was the Director of Human Resources and that "nothing gets past her." (*Id*.). Clack also brought up other patient complaints that had been investigated and deemed not founded. (*Id*.). Stewart was present for the entire meeting, but "never spoke a word" and "a few times she was looking towards her cell phone." (*Id*. at ¶ 14).

On February 21, 2019, Plaintiff was "let go" from his employment at RRH. (*Id*). He was told that it was because he had "retaliated against an officer on [his] day off." (*Id*. (alteration in original)).

In addition to the incident detailed above, Plaintiff has asserted the following: (1) Clack made a "derogatory statement" about his military veteran status, age, race/color, and sex on February 13, 2019, at approximately 5:00 p.m.; (2) Stewart retaliated against Plaintiff after the February 13th meeting, because Plaintiff had "complained about Clack and Chase Buttaccio human resources HR"; (3) Clack retaliated against Plaintiff after the February 13th meeting, because Plaintiff complained to Clack's supervisors about her "interview questions tactics"; (4) Stewart and Staub retaliated against Plaintiff because he "asked about promotion pay Dec 24th"; and (5) Buttaccio made an unspecified "statement" about Plaintiff." (*Id*. at ¶¶ 15-16).

Plaintiff has also alleged that in July of 2017, he sustained "serious injuries on the job when a violent patient attack[ed] another officer with a knife, requiring patient to disarm the patient." (*Id*. at ¶ 28). Plaintiff was out of work for four months due to his injuries and had to have multiple surgeries. (*Id*.). He returned to work in early November of 2017, but still had his hand wrapped in gauze and was attending physical therapy to increase his strength and mobility. (*Id*. at ¶ 29). Plaintiff alleges that RRH, acting through Staub and Stewart, refused to accommodate his "known injuries and resulting disability by lightening his workload[.]" (*Id*. at ¶ 30). Instead, he was "forced . . . to stay home until he could obtain a doctor's permission to return to work at Full Duty without limitation to protect his injured left hand, wrist and fingers." (*Id*. at ¶ 38).

- 4 -

## DISCUSSION

### I.   Standard of Review

"Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017).  In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005).

### II.   Plaintiff's Claims

#### A.   Previously Alleged Claims

The factual allegations set forth in Plaintiff's amended complaint are substantively identical to the factual allegations set forth in his original complaint, with the exception of his allegations regarding the alleged failure to accommodate in 2017.  Accordingly, as to all of Plaintiff's previously alleged claims, the Court finds that dismissal is required for the reasons discussed in detail in its prior Decision and Order.  (Dkt. 3).

**B.      Failure to Accommodate Claim**

Plaintiff has newly alleged a failure-to-accommodate claim related to his hand injury in 2017.   Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, *et seq*., prohibit employment discrimination on the basis of disability. "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."  *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004).

The Court notes that the ADA establishes various prerequisites for filing a lawsuit in federal court.   In particular, an individual claiming employment discrimination under the ADA "must first file a timely charge with the [Equal Employment Opportunity Commission ("EEOC")]".   *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011); *see also Basso v. Willow Run Foods, Inc*., 577 F. Supp. 3d 73, 83 (N.D.N.Y. 2022) ("Before commencing an action in federal court alleging violations of the ADA, a plaintiff must first file a timely charge with the EEOC.").   Here, the charge that Plaintiff filed with the EEOC and the New York State Division of Human Rights does not make reference to the alleged failure to accommodate in 2017.   To the contrary, Plaintiff did <u>not</u> check the box indicating that he was claiming that RRH had "[d]enied [him] an accommodation for [his] disability." (Dkt. 1 at 11).   Moreover, Plaintiff's charge was not filed until 2019, and "[t]he ADA . . . [has] at most, [a] 300-day statute[] of limitations for filing a charge with the EEOC after the alleged unlawful practice occurred."  *Basso*, 577 F. Supp. 3d at 80.   Accordingly, even

had Plaintiff mentioned the alleged 2017 failure to accommodate in his charge, it would not have been timely.

However, the Court will not *sua sponte* dismiss a discrimination claim on this basis. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  Instead, the Court has considered the merits of Plaintiff's newly alleged failure-to-accommodate claim.  "To establish a *prima facie* case of discrimination . . .  based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that (1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (quotation omitted).

Plaintiff has not alleged facts plausibly supporting the conclusion that while his hand was injured in 2017, he was capable of performing the essential functions of his job with a reasonable accommodation.  According to Plaintiff, Staub and Stewart had the "idea" to have Plaintiff work as a telephone dispatcher while he was recovering, but this was not feasible, because it required "substantial 'multi-tasking' functions using both hands."  (Dkt. 4 at ¶ 30).  Plaintiff further alleges that his direct supervisor suggested that he "could do the Patrol Vehicle Positions," but that this was not true "since it would similarly require performing functions using his injured hand, wrist and arm."  (*Id*. at ¶ 36). Plaintiff alleges vaguely that RRH should have "lighten[ed] his workload" and "lighten[ed] his tasks" (*Id*. at ¶¶ 30, 33), but these kinds of conclusory allegations are not sufficient to

support a claim of failure to accommodate.  *See, e.g., Clarke v. White Plains Hosp.*, No. 13-CV-5359 (CS), 2015 WL 13022510, at *6 (S.D.N.Y. Apr. 22, 2015) ("If Plaintiff meant to raise a failure-to-accommodate claim, Plaintiff has not pleaded any facts plausibly suggesting that the accommodation she requested—light duty—was a reasonable one given the nature of her job."), *aff'd*, 650 F. App'x 73 (2d Cir. 2016).   Accordingly, his newly alleged failure-to-accommodate claim is subject to dismissal.

Further, to the extent that Plaintiff's failure-to-accommodate claim is asserted under the ADA against any individual defendant—as opposed to RRH—it must fail.  "[A]s a matter of law, individuals may not be held liable under the ADA[.]"  *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 185 (S.D.N.Y. 2020).

## III.   Leave to Amend Complaint

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks omitted).  However, leave to amend pleadings is properly denied where amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

Here, as to all his claims except the newly alleged failure-to-accommodate claim, Plaintiff has been afforded a prior opportunity to amend, and has failed to remedy the deficiencies in his claims.  Those claims are accordingly dismissed with prejudice.

Plaintiff's newly alleged failure-to-accommodate claim is further dismissed with prejudice to the extent it is asserted against an individual defendant pursuant to the ADA. Any such claim fails as a matter of law, and more fulsome pleading cannot cure the deficiency.

Plaintiff's newly alleged failure-to-accommodate claim is dismissed without prejudice as to RRH and as to the individual defendants insofar as it is asserted pursuant to the NYSHRL, and he will be afforded an opportunity to file a second amended complaint plausibly alleging such a claim.

Plaintiff may file a second amended complaint consistent with this Decision and Order **within 45 days of entry of this Order**. Plaintiff is not required to file a second amended complaint—but if he fails to do so, this action will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's second amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in the action. Further, Plaintiff should not include in any second amended complaint claims that have been dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Court dismisses Plaintiff's failure-to-accommodate claim based on his hand injury in 2017 without prejudice as to RRH and as to the individual defendants to the extent it is asserted pursuant to the NYSHRL. All of

Plaintiff's other claims are dismissed with prejudice.   Further, Plaintiff is granted leave to file a second amended complaint consistent with this Decision and Order.

## **ORDER**

IT HEREBY IS ORDERED that Plaintiff's newly alleged failure-to-accommodate claim under the ADA as to RRH and under the NYSHRL as to all defendants is dismissed without prejudice; and it is further

ORDERED that all of Plaintiff's other claims are dismissed with prejudice; and it is further

ORDERED that Plaintiff will be provided an opportunity to file a second amended complaint **within 45 days of entry of this Order** consistent with this Decision and Order; and it is further

ORDERED that the Clerk of Court is directed to mail to Plaintiff a copy of this Decision and Order, a blank complaint form for use in the non-prisoner context, and the instructions for filing an amended complaint; and it is further

ORDERED that if Plaintiff fails to file an amended complaint **within 45 days of entry of this Order** the Clerk of Court is directed to dismiss the complaint with prejudice without further action of the Court; and it is further

ORDERED, that in the event the complaint is dismissed because a second amended complaint has not been filed, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on

motion to the United States Court of Appeals for the Second Circuit in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.

      SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      October 19, 2022
            Rochester, New York